UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01164-WYD

LANCE M. COLETTI,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## ORDER

I.    INTRODUCTION

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for supplemental security income under Title XVI of the Social Security Act ["the Act"], 42 U.S.C. § 1381, *et seq.* For the reasons stated below, this case is reversed and remanded to the Commissioner for further factfinding.

II.    BACKGROUND

Plaintiff was born on May 1, 1982 and was 24 years old at the time of the hearing in 2008, which is defined as a younger individual. (Transcript ["Tr."] 16, Finding 1.) He has a limited education (having only completed the eighth grade), and his past relevant work was unskilled. (*Id.*, 12, 16, Findings 6 and 8.)

The record reveals that at about age five, Plaintiff began receiving supplemental security income due to a mental disability and/or learning problems. (*Id.* 25, 106, 158.) He was in special education while in school. (*Id.* 14, 201-212, 125.) Plaintiff testified

that his benefits were terminated at about age 23 when he was convicted and imprisoned for assault, burglary, possession of a controlled substance, and a bond violation. (*Id.*, 26, 218.)

After Defendant was released from prison, he filed an application for supplemental security income on August 14, 2006, alleging an onset of disability in December 2000 due to mental retardation and a learning disability. (Tr. 9, 66-72, 80-81.) The application was initially denied and Plaintiff then requested a hearing which was held in February 2008. (*Id.* 22-33, 35-37.)

The administrative law judge ("ALJ") issued his decision in April 2008. (Tr. 9-17.) He found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (*Id.* 11.) At step two the ALJ found that Plaintiff had the severe impairment of mild mental retardation. (*Id.*) At step three he found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. (*Id.* 15.)

Turning to Plaintiff's ability to work, the ALJ found that Plaintiff had the residual functional capacity ["RFC"] to perform all exertional levels of work as defined in 20 C.F.R. § 416.967(c). (Tr. 13, Finding 4.) However, he found that Plaintiff "would be limited to simple, unskilled work, requiring GED levels of no more than 1/1/1 in reasoning, mathematic, and language" and should have "limited interaction with the general public, co-workers, and supervisors." (*Id.*) (footnote omitted).[1]

---

[1] GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily such education is obtained in elementary

Applying that RFC, the ALJ found at step four that Plaintiff was unable to perform his past work as a dishwasher, which job did not qualify as past relevant work due to earnings. (Tr. 15, Finding 5.) At step five, however, relying on the testimony of a vocational expert, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as farm worker, industrial cleaner and auto detailer. (*Id.* 15-16.)[2] Thus, the ALJ found that Plaintiff was not disabled within the meaning of the Act from September 15, 2004, through the date of the decision. (*Id.* 16, Finding 10.)

Plaintiff argues that the ALJ failed to properly weigh Dr. Rodriguez' conflicting medical opinion that Plaintiff is disabled. He also argues that the mental portion of the ALJ's RFC findings is not supported by substantial evidence in the record and that the ALJ failed to apply the correct legal standards. I address these arguments below.

III.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

---

school, high school, or college. However, it may be obtained from experience and self-study." U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles ("DOT"),* vol. II, app. C, pt. III (4th ed. 1991), http://www.occupationalinfo.org/appendxc_1.html#III. The GED scale is composed of three divisions: reasoning; mathematics; and language. *Id.*

   [2] Upon review of the Dictionary of Occupational Titles ["DOT"], counsel for the Commissioner determined that the auto detailer position identified by the vocational expert requires a reasoning level of 2 and is thus inconsistent with the ALJ's RFC finding. However, the Commissioner states as to the other two positions (farm worker and industrial cleaner), that the vocational expert's testimony appears consistent with the DOT.

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

      B.     <u>Whether the ALJ Properly Evaluated Plaintiff's Mental RFC</u>

The ALJ found that Plaintiff had a severe mental impairment and issued a RFC finding which included certain limitations. Plaintiff argues, however, that the mental restrictions the ALJ assessed were not consistent with the opinion of any physician or any other evidence contained in the record. Instead, they were created by the ALJ. Further, he argues that the ALJ erred in not following Social Security Ruling 96-8p which requires the ALJ's decision to contain a narrative discussion explaining how the evidence supports each element in the RFC finding. That is because the ALJ did not state what evidence supported his RFC findings. I agree with Plaintiff and find that the case must be remanded for appropriate fact finding on this issue.

"The ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence." *Barnett v. Apfel*, 231 F.3d 687, 689 (10th Cir. 2000). The Commissioner's Policy Interpretation of assessing RFC states:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations.) In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. . . , and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at * 7 (July 2, 1996). Thus, the RFC assessment must be supported by substantial evidence.

I agree with Plaintiff that the ALJ erred in this case as he did not explain what evidence he relied on in connection with his RFC findings. While the ALJ discussed Plaintiff's ability to perform self-care and certain household chores as well as the medical evidence generally (Tr. 13-15), he failed to link his RFC assessment to any of that evidence.

For example, the ALJ found that Plaintiff could perform simple, unskilled work, requiring GED levels of no more than 1/1/1 in reasoning, mathematic, and language. (Tr. at 13.) As to the evidence on this issue, while some providers evaluated Plaintiff's performance level in terms of what grade he is equivalent to, I have found no evidence that analyzed his GED level. Further, Plaintiff points out as to the GED assessment that level 1 language development requires that a person be able to read 95-120 words per

minute and understand 2,500 two and three syllable words. The ALJ did not cite to any evidence, and I have found none, which supported the ALJ's finding that Plaintiff could perform at this level. In other words, no evidence was cited that states how many words that Plaintiff can understand or how fast he can read as required in order for the ALJ to have assessed Plaintiff's ability at the GED level. The ALJ's finding as to Plaintiff's GED level appears to be simply guesswork and unsupported.

The ALJ's error in not discussing the evidence that supported his GED level for Plaintiff is particularly significant given the evidence regarding the limitations found in connection with Plaintiff's language and math skills. Dr. Patterson opined that Plaintiff's reading and spelling skills were equivalent to the fifth grade level, and his arithmetic skills equivalent only to the second grade level. (Tr. 128.) He also noted that Plaintiff's reading level was insufficient for the administration of a personality inventory, and that Plaintiff's general intellectual factors precluded the clinical utility of other tests. (*Id.* 127-29.) Further, he found significant deficits in Plaintiff's written language skills. (*Id.* 129.)[3]

I find the *Carpenter* opinion from the Tenth Circuit instructive on this issue. *See Carpenter v. Chater*, 537 F.3d 1264, 1267-68 (10th Cir. 2008). The ALJ in that case "summarized the evidence from two mental health practitioners, but failed to discuss all of the significantly probative evidence relevant to Carpenter's mental impairment, discuss how he resolved the conflicts in this evidence, or discuss how he resolved the conflicts between his findings and the evidence. *Id.*, 537 F.3d at 1269. The Tenth

---

[3] While Dr. Patterson's report was provided to the Appeals Council, not the ALJ, I find for the reasons discussed in the next section that the report is part of the record that can be considered in determining whether the ALJ's decision is supported by substantial evidence.

Circuit stated that the "ALJ must evaluate 'all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'" *Id.* (quoting 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)); *see also Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005) (remanding the case to the Commissioner where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC).[4]

The Commissioner argues, however, that there is evidence in the record which supports the ALJ's decision regarding the GED levels. It cites, for example, to the fact that in the function report completed by Plaintiff (Tr. 93-98), Plaintiff printed sentences containing a subject, verb, and object, used past and present tenses, and printed his name, address, and the date. The Commissioner also points to Plaintiff's testimony at the hearing and the achievement tests of Plaintiff. This evidence was not, however, relied on by the ALJ and cannot be used as a *post hoc* basis to support the ALJ's decision. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). Moreover, I do not believe that evidence is sufficient to show, for example, that Plaintiff can read 95-

---

[4] I also note as to RFC that the ALJ found that Plaintiff's ability to perform work as a dishwasher "strongly suggests" that Plaintiff's learning disability would not prevent work, but then found Plaintiff not credible based in part on his poor work history. (Tr. 15.) This is inconsistent. The ALJ cannot penalize Plaintiff for his poor work performance in terms of credibility while then pointing to a prior job as a basis for concluding that Plaintiff can work. Moreover, the ALJ ultimately found that Plaintiff could not perform his past work as a dishwasher. Again, this is inconsistent with his conclusion that Plaintiff can work despite his learning disability based on his previous job as a dishwasher.

120 words per minute and understand 2,500 two and three syllable words as required for a GED level of 1 in language.

The Commissioner also argues that Plaintiff's counsel conceded when asked by the ALJ at the hearing that the record did not support restrictions more severe than imposed by the ALJ. While an ALJ "is generally entitled to 'rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored'", *id.* (quotation omitted), the RFC assessment is an issue reserved to the Commissioner. 20 C.F.R. § 416.927(e)(2). The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, No. 04-7076, 2005 WL 2605301, at *3 (10th Cir. 2005). Remarks of counsel at the hearing are not evidence. Further, the ALJ did not rely on counsel's statement in connection with his analysis of the RFC. My review must be based on the reasons given by the ALJ or the Appeals Council, and must stand or fall on this basis. *See Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985)

Finally on this issue, the Commissioner argues that the ALJ's findings regarding Plaintiff's GED levels were the most restrictive possible and only served to benefit, not prejudice, Plaintiff. Again, I reject this argument. It may be that Plaintiff cannot perform even at the most restrictive levels set by the GED. If so, he may be disabled. Plaintiff was prejudiced by the ALJ's failure to properly assess this issue.

Based on the foregoing, I agree with Plaintiff that the ALJ erred in not linking the RFC to specific evidence in the record. *See Southard v. Barnhart,* 72 Fed. Appx. 781,

784-785 (10th Cir.2003) ("finding error where the ALJ did not show how the evidence supported each finding in the RFC and the ALJ failed to cite " *specific* medical facts ... and nonmedical evidence" which supported the RFC) (emphasis in original); *see also Brant v. Barnhart,* 506 F. Supp. 2d 476, 486 (D. Kan. 2007). The lack of an explanation for the RFC findings deprives this Court of the ability to review the ALJ's findings. The ALJ also failed to provide a sufficient basis to determine that appropriate legal principles have been followed, which is a ground for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). Further, the Commissioner has not shown that the RFC findings are supported by substantial evidence. Accordingly, a remand is appropriate.

I also agree with Plaintiff that the ALJ does not have the expertise to quantify a Plaintiff's mental impairments on his own. Rather, this is a job for the appropriate expert—either medical or vocational. The ALJ cannot substitute his opinion for the expert opinion of a physician. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996). This must be taken into account on remand.

Also on remand, the ALJ must articulate and adequately "assess the nature and extent of [Plaintiff's] mental limitations" to enable a correct and complete determination of his "RFC for work activity on a regular and continuous basis." 20 C.F.R. § 404.1545(b). Further, the ALJ should address whether Plaintiff can "'focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and

symptoms of the claimant's mental disorder.'" *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (quotation omitted).

Moreover, mental impairments must be assessed functionally. While the ALJ did a functional assessment for purposes of determining whether the mental impairment met or equaled a listing (Tr. 12), he did not do this for the RFC. As set forth in *Holt v. Astrue*, No. 08-2410-KHV-GBC, 2009 WL 3807082 (D. Kan. 2009), "the Commissioner has explained the difference between the task of evaluating the severity of mental impairments at steps two and three based upon the broad mental functional areas identified in the psychiatric review technique and that of assessing mental RFC." *Id.* at *6 (citing SSR 96-8p) "'The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in' the four functional areas." *Id.* (citing *id.*) "RFC must be expressed in terms of specific work-related functions." *Id.* "Therefore, an ALJ should not state a mental RFC in terms of the four mental functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand." *Id.* The ALJ must also "explain how the record evidence requires or supports the limitations assessed." *Id.* at *7.

Finally, while the ALJ found at step three that Plaintiff was no more than mildly functionally limited in certain areas (Tr. 12), I am not sure this is supported by the record, particularly as it relates to RFC. Indeed, there was evidence that Plaintiff was at least moderately limited in certain areas. For example, Dr. Hanze, the state agency non-examining psychologist, opined that Plaintiff had moderate difficulties in maintaining

concentration, persistence, or pace. (*Id.* 187.) He also found that Plaintiff had moderate limitations in the ability to understand, remember, and carry out detailed instructions. (*Id.* 192-93.) The Tenth Circuit has made clear that the existence of a moderate impairment is not the same as no impairment at all. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007). Also, Ms. Wise, a counselor, opined that Plaintiff displayed serious impairments in social, occupational and school functioning, and assessed a GAF score for Plaintiff of 50 consistent with that. (*Id.* 227).[5] These functional limitations need to be properly assessed in connection with Plaintiff's RFC.

    C.    <u>Whether the ALJ Properly Weighed Dr. Rodriguez' Opinion</u>

Dr. Rodriguez examined Plaintiff on December 13, 2007, at the request of the Colorado Department of Human Services to determine eligibility for the Aid to the Needy and Disabled (AND) welfare program. (Tr. 132-134.) Dr. Rodriguez completed a Med-9 form in conjunction with his evaluation. (*Id.*) As a result of the examination, Dr. Rodriguez diagnosed Plaintiff as having major depression, an anxiety disorder, post traumatic stress disorder, and methamphetamine/cocaine abuse. (*Id.* 134). He also certified that Plaintiff was disabled and unable to work. (*Id.* 132). His prognosis was that Plaintiff's disability was expected to last twelve months or longer. (*Id.* 134.)

Dr. Rodriguez' opinion as well as a report of Dr. Patterson were presented for the first time to the Appeals Council on review. If new and material evidence is submitted

---

    [5] While Ms. Wise is not an "acceptable medical source" per the regulations, her opinion is relevant "to show the severity of [Plaintiff's] impairment(s) and how it affects [Plaintiff's] ability to work" and must be considered by the ALJ. 20 C.F.R. § 404.1513(d); *see also Carpenter v. Chater*, 537 F.3d 1264, 1267-68 (10th Cir. 2008).

with a request for review, the Appeals Council must consider it if it relates to the period on or before the date of the ALJ hearing decision. 20 C.F.R. § 416.1470(b). The Appeals Council will then review the case if it finds that the ALJ's actions, findings, or conclusions are contrary to the weight of the evidence in the record, including the new and material evidence. *Id.*; *see also O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

In this case, the Appeals Council considered the evidence but denied the request for review as it found it "does not provide a basis for changing" the ALJ's decision. (Tr. 2.) It was not required to more thoroughly explain the basis for its decision. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207-08 (10th Cir. 2006). Thus, I reject Plaintiff's argument that the Appeals Council erred in not providing specific legitimate reasons for rejecting Dr. Rodriguez' opinion.

Nonetheless, since the Appeals Council considered this evidence in connection with Plaintiff's request for review, it is now part of the record. *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). I find that the opinions of both Dr. Rodriguez and Dr. Patterson are relevant to the issues on remand and must be properly considered by the ALJ. *See, e.g., Ramirez v. Astrue*, 255 Fed. Appx. 327, 332 (10th Cir. 2007) ("Because Dr. Davis's opinion that Mr. Ramirez was unable to work conflicts with the ALJ's determination that Mr. Ramirez could perform light work, we direct the ALJ to make specific findings on remand explaining why he did not adopt Dr. Davis's opinion. Although the issue of whether Mr. Ramirez was able to work is an issue reserved to the Commissioner, . . . the controlling rules nonetheless "provide that adjudicators must

always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner.")

IV. <u>CONCLUSION</u>

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding consistent with this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated July 29, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge